Our final case today is United States v. Wheeler. Ms. Hester, when you're ready, take your time. May it please the Court, Ann Hester representing Gerald Wheeler. The government was right when it told the district court that granting Gerald Wheeler's savings clause relief is required. That position is consistent with N. Ray Jones and with the language and purpose of the savings clause. But the court should not even reach that question because the requirements of the savings clause are not jurisdictional and the government's consent to relief requires the courts to consider Wheeler-Simmons' claim on the merits. In Rice v. Rivera, the parties in the court assumed without discussion that the requirements of the savings clause are jurisdictional. That makes Rice a drive-by jurisdictional ruling that has no precedential effect under the Supreme Court's decision in Arbog. Rather than relying on Rice, the court has to ask whether Congress made a clear statement that the savings clause requirements are jurisdictional. It did not. The savings clause provides that an application for a writ of habeas corpus shall not be entertained unless certain factors appear. But that provision lacks any clear statement that it is jurisdictional for five reasons. First of all, Congress has used that shall not be entertained language to describe statutes of limitation and time limits. They're almost never jurisdictional. And in fact, one of those statutes of limitation was part of the same 1948 legislation that enacted the savings clause. That's 28 U.S.C. section 2462. But further, the savings clause has repeatedly held that the term shall, while it's mandatory, is not jurisdictional. And the Supreme Court's decision in Quy Phuong Hoang is an excellent example of that, where the language shall be forever barred was found to not be jurisdictional. Third, section 2255 is not a jurisdictional statute. It's entitled Federal Custody Remedies on Motion Attacking Sentence. And its purpose was to change the venue of post-conviction motions. Venue is a waivable defense. And to the extent that the savings clause also places limitations on successive petitions, the common law limitation on successive petitions also was a waivable affirmative defense. So Congress had no reason to make the savings clause's requirements jurisdictional. And if it intended to do so, it would have clearly done so by using jurisdictional language. Fourth, the savings clause in particular was intended to avoid questions about the constitutionality of section 2255's substitute for habeas corpus by providing a safety mechanism and making its requirements jurisdictional wouldn't further that purpose. Fifth and finally, as Judge Easterbrook explained in Webster v. Carraway, 2241 itself tells us when jurisdiction over a habeas petition runs out. It provides that no court, justice, or judge shall have jurisdiction to hear or consider certain types of claims from enemy noncombatants. So the court should not infer additional limits from the nonjurisdictional language in 2255. But even if the savings clause's requirements are jurisdictional, Wheeler's erroneous mandatory minimum sentence requires savings clause relief. First of all, Wheeler's entitled to relief because he is innocent of the aggravated offense for which he's been sentenced. This court made it clear in Simmons that a recidivist offense is a different offense than the underlying core offense. And as the Supreme Court explained in Apprendi, Almendarez-Torres is merely a limited exception to the Sixth Amendment jury trial rule. The fact of a prior conviction still has to be found, even if only by a judge, before the defendant can be convicted and sentenced for a recidivist offense. So if N. Ray Jones limited relief to cases of actual innocence, Wheeler satisfies that requirement. But Jones doesn't require that limitation because savings clause relief for fundamental sentencing errors is consistent with the plain language and history of Section 2255, and it's also consistent with the reasoning of N. Ray Jones. The text of the savings clause focused on the legality of the prisoner's detention, not his conviction, which is a term that's used in a neighboring subsection. If Congress had intended for the word detention to be limited to convictions, it would have said so, as it did in subsection F. The history of 2255 also demonstrates that Congress intended the savings clause to provide a remedy for illegal sentences. 2255 was intended to provide a remedy identical to habeas, and to strengthen and not dilute, to dilute the writ's protections in the core of habeas corpus historically includes challenges to the duration of a prisoner's sentence. So when Congress enacted the savings clause, it had no intent to exclude sentencing claims from the reach of that provision. And finally, under N. Ray Jones, a sentencing error that's a fundamental defect requires savings clause relief, and that's because the Court expressly adopted the reasoning of the Seventh Circuit in Davenport, which explained that if an error is so fundamental that habeas corpus would traditionally provide a remedy, then the error is a fundamental defect or a miscarriage of justice requiring savings clause relief. And since habeas corpus traditionally provides a remedy for fundamental sentencing errors, those errors require savings clause relief. Finally, Wheeler's erroneous mandatory minimum sentence is a fundamental sentencing error. The government here is taking the position that only a sentence that exceeds the statutory maximum can be a fundamental defect. But drawing the line in this way contradicts Alain, where the Supreme Court held there's no basis to distinguish facts that raise the maximum from those that increase the minimum. When the underlying fact is a conviction that was improperly counted as a predicate, both types of sentences are illegal. They both sentence the defendant for an aggravated offense that he didn't commit. They both violate due process by removing the district court judge's discretion. And they both violate separation of powers principles. And in this case, it does that by subverting congressional intent that offenders like Wheeler be sentenced in the district court's discretion using the 3553A factors, but also by sentencing him for an aggravated offense without congressional authorization. Even without the enhancements, the enhanced statutory minimum, could he have been sentenced, could he have received the same sentence? He could not have received the same sentence because the guidelines range was so much lower. He had presented a great deal of mitigating evidence at sentencing, and there really wasn't any aggravating evidence at sentencing. It would have been an abuse of discretion for the district court to sentence him up to 120 months. There just weren't any reasons on the record to do that. I understand the government's argument to be that he could have received the same sentence. So I guess they can explain. The 120-month sentence was within the correct statutory maximum, which is 40 years. But that is a different sentence because it's a sentence for an aggravated offense. So it's kind of like sentencing someone to robbery when he's convicted of larceny, even though the ranges overlap. But it's still an illegal sentence and violates separation of powers, even if that same sentence could have been issued. Finally, the decisions from the Sixth and Seventh Circuits are consistent with Jones and provide the court with compelling reasons to apply the savings clause to Wheeler's claim. They're like the mandatory career offender sentences in Brown and Hill in some ways because the mandatory minimum sentence increased the sentence beyond that authorized by the sentencing scheme. It dramatically increases the point of departure for a sentence, and it wrongly deprived Wheeler of eligibility for retroactive sentencing guideline reductions. But it's even more serious than those sentences, too, because it deprived the sentencer of all discretion to impose a lower sentence, while at the same time the mandatory guidelines still gave courts discretion to impart. So the due process and separation of powers concerns that exist here did not exist in the Hill and Brown cases that concerned the mandatory career offender sentence. So in conclusion, the court should rule the savings clause is not jurisdictional and that the government's consent to relief requires the court to consider Wheeler Simmons' claim on the merits. You don't think we have to overrule rights to get to where you want to go? You don't, and actually the court's recent decision in Welsh is an example of how- If we overrule it, we'd have to go in bank, wouldn't we? You would have to go in bank to overrule it. But because it is a drive-by ruling, ARBOG, the Supreme Court has expressly instructed courts to not use drive-by rulings as presidential decisions. Well, if we find it is jurisdictional, can we still get to where you want to go? Yes, and I think I've explained that because even if it is jurisdictional, he still qualifies under the savings clause because this is a fundamental sentencing defect. 2255 contemplates the savings clause will cover sentencing errors, and the reasoning of Henry Jones also indicates that sentencing errors should be included in the savings clause. Thank you. I'll reserve the rest of my time. Thank you. Is it Fagan? It's Fagan, Your Honor, but I'll pretty much answer to anything at this point. Well, that's fine. I didn't want to mispronounce it. Close enough? Absolutely. Good to have you here. Thank you, Judge King, and may it please the Court. Our background position, as detailed in our brief, is that we no longer believe the saving clause can be used as an end-around to the limitations on second or successive petitions that Congress enacted in Section 2255H. And when did that change in position occur? That change in position occurred contemporaneous with our filing of the responsive brief, in this case, Your Honor, which represents the considered views of the Solicitor General. We take changes in position very seriously. We had very serious deliberations about this that were prompted by the need and to respond to a potential cert petition in the McCarthan case. Are you with the Solicitor General? You're with the Solicitor General's office? Yes, Your Honor, I'm in the Solicitor General's office. We had a fellow from the Solicitor General's office out here one time arguing a different view than what you're espousing today, right? That's correct, Your Honor. Again, we acknowledge that our- What changed? So, Your Honor, following the Eleventh Circuit's decision in McCarthan, which overturned en banc a Jones-like rule that that circuit had developed, the department, which is now under new leadership, had a process to determine what our position would be. And that was in 2017? Your Honor, I- McCarthan was in 2017. Yes, Your Honor, McCarthan was in 2017. Was there no case like McCarthan before 2017? The only similar decision before 2017 was the Tenth Circuit's decision in Prost, which I believe was in 2011. That Justice Gorsuch wrote? That's correct, Your Honor. At the time, he was on the Tenth Circuit. It was written by then-Judge Gorsuch. So that case was out there-that was in 2011. So that was out there for six years, during which the government had the opposite positions. I don't see how this McCarthan in 2017 was the-what changed things. Well, Your Honor, there was-it was a combination of factors. There's the McCarthan decision in 2017. There's the need for our office to respond to a potential petition for certiorari, which was, in fact, filed in that case. We wanted to make that decision in time to inform this court of our views with respect to this case. And we do have new leadership in the department. So you get new leadership in the department. Is the Justice Department changing positions on this? Will they, though? No, Your Honor. Again, we take changes in positions very seriously. What they used to say back in those old Western movies, you shouldn't speak with the pork in a tub. But you all took a different position in this case in the district court. That's correct, Your Honor. Again, we take changes in positions very seriously. They do happen from time to time. I can assure the court, without getting into any details of the deliberations here, we don't- What about the law of the case doctrine? Does that apply from district court to appeals court? Can the government do that? I guess you can. Well, in this case, Your Honor, it is a jurisdictional bar in our view, and so we don't believe that that applies. But the 11th Circuit's the minority, isn't it? The-excuse me, Your Honor? The 11th Circuit opinion that you were eyeing on here. Well, Your Honor, the 11th Circuit is actually- Is that the minority view or not? No, it's the majority view. The 2nd Circuit, this court in Rice, and I can get into that in a second, the 6th Circuit, the 9th Circuit, and I believe the 11th Circuit all say that it's jurisdictional. I will acknowledge to the court that the 11th Circuit is the only one with a considered decision on that subject that doesn't simply kind of take it as a given. But we do think that's the right view, and actually we think this court's decision in Rice- She called a drive-by ruling. Many of the circuits have what you would call drive-by rulings. Rice, I don't think, is a drive-by ruling. Rice presented a situation very similar to what we have today, I would say identical in all relevant respects, which is that the government took the position that relief was warranted in district court and acquiesced to relief. On appeal, the district court denied relief, and on appeal, the government defended the district court's judgment. And this court was, to be candid, quite unhappy with the government for having changed its position on appeal, but it believed it had to address the government's new position because the saving clause in 2255E is, in fact, jurisdictional, and the court found that relief was precluded under the saving clause. It didn't meet the test in Jones. And so I don't think that decision can fairly be characterized as a drive-by ruling, given the effect it had on the case. But, Your Honor, we are not asking the court today to overrule Jones. We understand the panel is not able to do that. We're only asking the court today not to go further than any circuit has gone and extend the saving clause to claims of statutory error based on circuit law in the application of a mandatory minimum sentence. I think the right lens through which to view this particular case is the lens of actual innocence. Let's suppose defendant were actually raising this in a first 2255 motion, and let's further suppose that that first 2255 motion were timely. He would still have to establish actual innocence in order to overcome the procedural default he would face for not having raised this issue on direct appeal. Certainly, he shouldn't be in a better position when he is proceeding under the saving clause. And as to actual innocence, this Court certainly has never held that a defendant can be actually innocent of a mandatory minimum. The Supreme Court itself has only extended the concept of actual innocence to eligibility for capital sentencing. Even with respect to the accuracy of the determination of capital sentencing, the Court has said a potential error in the determination of whether a capital sentence should be imposed is, quote, far from a showing of actual innocence of that sentence. I think even as just a matter of terminology, it's difficult to say that someone is actually innocent of a mandatory minimum. If we want to look at the text of Section 2255e, I think a challenge to a mandatory minimum sentence that is within the range that would otherwise have been authorized, even without the mistake of law here, that is not a challenge to the legality of the detention. There is no claim here, as there would be if there were a claim that what the defendant did was no longer a crime or the defendant's in prison longer than the statutory maximum, that would suggest that it is simply illegal for him to be in prison. The claim here is effectively a claim of a procedural error, albeit a very important procedural error, but a procedural error nonetheless at sentencing. I don't think that's cognizable through the actual innocence lens, which I think is the best analog here, because really what we have here is a species, I think, and a particularly robust species of procedural default. I also think that it would be very difficult to draw the line if the court were to allow relief here, because there are other kinds of errors that could be analogized to mandatory minimums in the sense that a court misunderstands the extent of its discretion. So one example of that might be the Supreme Court's recent decision in Dean against the United States, where the court said that under the consecutive mandatory sentence that is mandated by Section 924C, a district court has the ability to take into account the fact that it's going to have to impose that consecutive sentence when it's figuring out what sentence it's going to impose on the remaining counts. And so a court that misunderstood its discretion in that respect and thought that it could not take into account the 924C consecutive sentence when it was crafting the sentence on the remaining counts would be making an error as to the scope of its own discretion. Many circuits had law to that effect, and it's difficult to draw a line between that kind of error and the kind of error the court has in front of it today. Another example might be error under the Supreme Court's decision in Tapia, which made clear that district courts can't take into account a defendant's potential ability to rehabilitate himself in prison as a reason for extending the length of the sentence. A district court there that made an error that was cleared up by Tapia would again be misunderstanding the scope of its own discretion. The one thing that the defendant has said about the actual innocence bar that I'd like to respond to is the reliance on a lien and this Court's Apprendi jurisprudence. I don't think the Court's Sixth Amendment jurisprudence is the right way to think about the actual innocence argument here. But first of all, even if it were, the controlling precedent would be Almandar Azores, which was not overruled by a lien and which says that when you have a recidivism enhancement like the one here is generally a sentencing enhancement. It is not a separate offense. But even if we move past recidivism enhancements, a lien is about a procedural rule about things that will be considered elements of the offense for constitutional Sixth Amendment purposes in that they need to be alleged in the indictment and submitted to the jury for a finding beyond a reasonable doubt. It does not say that something is a substantive offense for all purposes. And it certainly doesn't say that mandatory minimums like the one we have here are substantive offenses for all purposes. And if the Court were to rely on a lien to suggest that the defendant here is actually innocent of his sentence in some key respect, I think it would call into question the uniform conclusion of the circuits, which is consistent with the Supreme Court's decision in Shearer against Summerlin, that apprendee principles are nonsubstantive and aren't cognizable on collateral review. Let me also say just a couple words about jurisdiction. As I've said, I think Rice is really on all fours with this. I also think as an original matter, this provision should be considered jurisdictional. The language entertain while not dispositive is very commonly used in connection with jurisdiction. There are numerous statutes, including one very related to this, 2241B, that use the phrase jurisdiction to entertain. If you look at the Supreme Court's decision in Miller-El and other decisions of the Supreme Court, they use the word entertain in reference to jurisdiction. Section 2255C uses the words entertain and determine in contradistinction to one another. It says entertain or determine. Suggested entertain is something different. And the cases that are cited by defendant are cases about statutes of limitations, cases like Wong and the Supreme Court decision in Wong in June. And statutes of limitations and time limits in general, the Supreme Court has instructed, are presumptively considered to be non-jurisdictional. That's not the case for the kind of limitation we have here, which is not a statute of limitations. I think the context also very strongly indicates that this is jurisdictional. Under the Supreme Court's decision in Burton v. Stewart, we know that the limits in 2255H on second or successive collateral attacks are jurisdictional because they refer to Section 2244, which the court described as jurisdictional in Burton. And I think it would be quite strange if one jurisdictional bar in 2255H could easily be avoided by restyling the defendant's motion as a petition under Section 2241. Getting back to the difference between this and a statute of limitations, this is really a completely different form of relief. And Section 2255 is the section that speaks to when you can file 2250 ‑‑ excuse me, Section 2255E is really the section that speaks to when you can file a Section 2241 petition versus a motion for relief under Section 2255. And they are very distinct forms of relief. 2255 is a motion in a criminal case. Section 2241 is something much more akin to the filing of a new action. They take place in different venues. 2241 is the venue in which the prisoner is incarcerated. Section 2255 is the venue in which the defendant was sentenced. And they take place against different parties. Under Section 2241, you name the warden. Under Section 2255, you name the United States as the counterparty. I think an analogy could be drawn to the Supreme Court's cases involving the preclusion of judicial review when it replaces one remedy with another or when it has a more specific remedy for a particular circumstance. And preclusion of judicial review is itself a jurisdictional doctrine. Unless this Court has further questions, I thank the Court for its time. Thank you. Thank you very much, sir. Ms. Escher. I'll just start where the government left off with its argument that preclusion of jurisdiction is a jurisdictional doctrine. That is not an argument that is made anywhere in the government's brief. And I would submit that it is waived. And if it's not waived, then we should be given an opportunity to respond to the new arguments that it's raising here in oral argument. As far as language entertained being commonly used in jurisdictional statutes or in court decisions about jurisdiction, I think the most compelling evidence in this case that Congress did not intend that language to be jurisdictional is that it used the exact same phrase in the very same legislation to articulate a statute of limitations. And statute of limitations are almost never jurisdictional. And that is an indication that Congress intended this to be on a footing with statutes of limitations. The government's argument that a lane is procedural and not retroactive is a red herring because the argument that this is a different offense because it is a recidivist offense comes straight from Simmons, which this court has declared to be retroactive. And Simmons makes clear that outside the Sixth Amendment context, a recidivist offense is a different offense and that the court cannot impose a recidivist offense without evidence that the predicate offense has actually been, that he's actually been convicted of a predicate offense. As far as the government's reference to Dean and Tapia, again that's something not in the government's brief, but the difference between those cases and this one is the difference between sentencing factors and aggravated recidivist offenses, which are different offenses. And also Dean is not retroactive, but Simmons is. And this is a Simmons error. And again, the government argued actual innocence hasn't been extended beyond the underlying conviction, but that is not an argument made in the government's brief. Their only argument in their brief about the actual innocence argument is in a footnote, and it refers to... It's hard to keep track of what the government thinks in this case. It is. It is. And the government brought up procedural default on the innocence issue, but the government's waived any procedural default defense in this case. So the procedural default definition of innocence is not what the court should be concerned with here. What the court should be concerned with is 2255's language and meaning. Mr. Fagan argued that granting relief in this case would take this court further than any court has done in the savings clause context, but that rests on the government's argument that the Seventh and Sixth Circuits and Brown and Hill were deciding cases that were over the statutory maximum, but that's just wrong as we explain in our brief. Those are mandatory career offender sentences that did not have any statutory or constitutional issues as this problem in this case does. So the court would be really in between, not on the far reaches. And finally, with the government's argument that Rice is not a drive-by ruling, this case is not an all-force with Rice because in Rice, while the government did change its position, none of the parties argued the jurisdictional issue. I cited the briefs in my brief. No one raised the jurisdictional issue at all. The prisoner did not argue that the government had waived jurisdiction. So the court basically was left with just an assumption that it was jurisdictional without any analysis. Does the court have any additional questions? Thank you very much. Thank you. We appreciate the arguments of counsel. We're going to adjourn the court. Sign it out. It will come down to Greek counsel.
judges: Robert B. King, Henry F. Floyd, Stephanie D. Thacker